**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
--------------------------------------- X

**UNITED STATES OF AMERICA,**                       :
                                                     :
                                                     :     **2:07-CR-20189-DML-RSW-1**
   **- against –**                                   :
                                                     :     **Motion to Reduce Sentence**
                                                     :     **Pursuant to 18 U.S.C.**
                                                     :     **§ 3582(c)(1)(A)(i)**
**ROBERT MCDONEL,**                                  :
                                                     :
                              **Defendant.**         :
--------------------------------------- X

## MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Defendant Robert McDonel, through counsel, respectfully moves this Court for an order reducing his sentence based on "extraordinary and compelling reasons." The grounds for the motion are set forth in the Memorandum of Law in Support of Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) filed contemporaneously herewith.

DATED:       New York, New York
             January 13, 2020

DEBEVOISE & PLIMPTON LLP

By: /s/ *John Gleeson*
John Gleeson
Lauren Dolecki
Catherine M. Walsh
Erica C. Reich (*admission pending*)
jgleeson@debevoise.com
lmdolecki@debevoise.com
cwalsh@debevoise.com

ereich@debevoise.com
919 Third Avenue
New York, New York 10022
(212) 909-6000
*Attorneys for Robert McDonel*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
-------------------------------------- X

**UNITED STATES OF AMERICA,**                :
                                            :
                                            :   **2:07-CR-20189-DML-RSW-1**
       **- against –**                       :
                                            :   **Motion to Reduce Sentence**
                                            :   **Pursuant to 18 U.S.C.**
                                            :   **§ 3582(c)(1)(A)(i)**
**ROBERT MCDONEL,**                          :
                                            :
               **Defendant.**                :
-------------------------------------- X


## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

DEBEVOISE & PLIMPTON LLP

John Gleeson
Lauren Dolecki
Catherine M. Walsh
Erica C. Reich
jgleeson@debevoise.com
lmdolecki@debevoise.com
cwalsh@debevoise.com
ecreich@debevoise.com
919 Third Avenue
New York, New York 10022
(212) 909-6000

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................. 1

FACTUAL BACKGROUND .................................................................................. 1

ARGUMENT ......................................................................................................... 3

A.    The Court Has Jurisdiction to Grant Release for "Extraordinary and Compelling Reasons" .................................................................................. 3

B.    The Relief Requested Here Is Consistent with the Text of the Statute and the Sentencing Commission's Policy Statement ...................................... 4

      1.    Congress Did Not Limit "Extraordinary and Compelling Reasons" to a Specific, Enumerated Set of Circumstances ......................... 4

      2.    The U.S. Sentencing Commission Has Not Limited "Extraordinary and Compelling Reasons" for Compassionate Release to Medical, Age-Related, or Family Circumstances ........................... 6

      3.    Extraordinary and Compelling Circumstances Warrant a Reduction in McDonel's Sentence ................................................ 10

C.    The Relevant Factors Weigh Strongly in Favor of a Sentence Reduction ...................... 11

      1.    The § 3553(a) Factors Weigh in McDonel's Favor .............................. 12

      2.    McDonel Is Not a Danger ...................................................................... 13

D.    McDonel Is Deserving of Mercy .................................................................. 16

CONCLUSION.................................................................................................... 17

# TABLE OF AUTHORITIES

**CASES**

*Dorsey v. United States*,
   567 U.S. 260 (2012)............................................................................7

*United States v. Beck*,
   No. 1:13-CR-186-6, 2019 WL 2716505 (M.D.N.C. June 28, 2019).....................10

*United States v. Brown*,
   No. 4:05-CR-00227-1, 2019 WL 4942051 (S.D. Iowa Oct. 8, 2019) ............8, 9, 10

*United States v. Cantu*,
   No. 1:05-CR-458-1, 2019 WL 2498923 (S.D. Tex. June 17, 2019).........4, 8, 9, 10

*United States v. Cantu-Rivera*,
   No. CR H-89-204, 2019 WL 2578272 (S.D. Tex. June 24, 2019) ....................4, 8, 10, 11, 12

*United States v. Da Cai Chen*,
   127 F.3d 286 (2d Cir. 1997)...................................................................7

*United States v. Ebbers*,
   No. 02-CR-1144-3, 2020 WL 91399 (S.D.N.Y. Jan. 8, 2020) ................................9

*United States v. McGraw*,
   No. 2:02-cr-00018 (LJM)(CMM), 2019 WL 2059488 (S.D. Ind. May 9, 2019) ....................8

*United States v. Pierninanzi*,
   23 F.3d 670 (2d Cir. 1994)......................................................................8

*United States v. Schmitt*,
   No. CR12-4076-LTS, 2020 WL 96904 (N.D. Iowa Jan. 8, 2020)...........................8

*United States v. Simons*,
   No. 07-CR-00874, 2019 WL 1760840 (E.D.N.Y. Apr. 22, 2019) .........................16

*United States v. Urkevich*,
   No. 8:03-CR-37, 2019 WL 6037391 (D. Neb. Nov. 14, 2019) ....................8, 9, 11

*United States v. Valdez*,
   No. 3:98-cr-0133–01-HRH, 2019 WL 7373023 (D. Alaska Dec. 31, 2019)...........................8

*United States v. Walker*,
   No. 1:11 CR 270, 2019 WL 5268752 (N.D. Ohio Oct. 17, 2019)...........................11

STATUTES

98 Stat 1837 (Oct. 12, 1984) ......................................................................... 3

18 U.S.C. § 924(c) ................................................................................. 1, 2, 10

18 U.S.C. § 3142(g) ...................................................................................... 11

18 U.S.C. § 3553(a) ................................................................................. 11, 12

18 U.S.C. § 3582(c)(1)(A) .................................................................... *passim*

28 U.S.C. § 992(a)(2) ..................................................................................... 6

28 U.S.C. § 994(t) .......................................................................................... 6

Comprehensive Crime Control Act of 1984 .............................................. 3, 5

P.L. 115-391, 132 Stat. 5194 .................................................................... 1, 3

S. Rep. No. 98-225 (1983) ............................................................................. 5

U.S.S.G. § 1B1.13 .................................................................... 7, 8, 10, 11, 12

U.S.S.G. § 1B1.13 cmt. N.1(A)-(C) .............................................................. 9

OTHER AUTHORITIES

*The Answer is No: Too Little Compassionate Release in US Federal Prisons* (2012) ................. 6

James C. Howell et al., *Young Offenders and an Effective Response in the Juvenile and Adult Justice Systems: What Happens, What Should Happen, and What We Need to Know* (2013) ............................................................................................ 14

Katarzyna Jednoro et al., *The Influence of Socioeconomic Status on Children's Brain Structure* (2012) ...................................................................................... 14

Law and Neuroscience, *How Should Justice Policy Treat Young Offenders?* ........................... 13

Rachel Elise Barkow, *Prisoners of Politics* 44–45 (2019) .......................... 13

Yusuke Moriguchi & Ikuko Shinohara, *Socioeconomic Disparity in Prefrontal Development During Early Childhood* (2019) .................................................. 14

Defendant Robert McDonel, through counsel, respectfully moves this Court for an order reducing his sentence based on the "extraordinary and compelling reasons" discussed below, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  We also request oral argument on this motion.

## INTRODUCTION

McDonel was sentenced in 2008 to a prison term of 1,285 months—more than 107 years—based on his involvement in five robberies in 2006 when he was 19 years old.  The bulk of this harsh sentence was the result of five 18 U.S.C. § 924(c) counts.    Absent a reduction, he will die in prison, as his projected release date is in 2103, when he would be 115 years old.

On October 2, 2019, McDonel submitted a written request to the Warden of USP Atwater asking that the Warden move this Court for a reduction of McDonel's sentence under 18 U.S.C. § 3582(c)(1)(A)(i).  On November 4, 2019, the Warden informed McDonel in writing that the Warden was declining to file such a motion.

Thanks to the amendments to § 3582(c)(1)(A) that were enacted as part of the First Step Act, the Court is now empowered to bring a measure of justice to McDonel's sentence, and we ask the Court to do just that for the reasons set forth below.  *See* P.L. 115-391, 132 Stat. 5194, at § 603 (Dec. 21, 2018).

## FACTUAL BACKGROUND

Over a two-week period in November 2006, McDonel and his co-conspirators, Johnnie Cromer, Frederick Atkins, Maurice Woodley, and Kenneth Brown, engaged in five robberies of businesses in Detroit.

Woodley was arrested some time before McDonel.  McDonel was arrested on December 7, 2006.  Cromer and Atkins conducted three additional robberies after McDonel's arrest. During one of them, in April 2007, a shot was fired during a struggle between Atkins and a

customer. While running from the store, Atkins dropped his cell phone, which the police used to track him down and arrest him. Cromer was arrested pursuant to an arrest warrant on August 2, 2007.

Prior to trial, the Government approached McDonel and offered him a plea deal, pursuant to which the Government would recommend that he be sentenced to 20 years if he cooperated and 30 years if he did not cooperate. McDonel refused the offer and instead chose to exercise his right to trial.

On March 31, 2008, McDonel was convicted of five counts of Hobbs Act robbery; all five of those charges had an accompanying § 924(c) count, and he was convicted of those charges as well. After trial, the Government once again approached McDonel with a plea offer of 20 years if he agreed to provide information related to other crimes, which McDonel again refused. He was sentenced on August 6, 2008, to consecutive terms of imprisonment totaling 107 years on the five § 924(c) counts,[1] to run consecutively to concurrent terms of one month on the Hobbs Act robberies.

McDonel's co-conspirators fared far better. Woodley and Cromer testified against McDonel and Atkins at their trial in exchange for reduced sentences. Woodley was sentenced to four years in prison; Cromer was sentenced to 20 years.

As noted above, on October 2, 2019, McDonel submitted a Compassionate Release application to the Warden of USP Atwater where he is incarcerated, requesting that the Warden move this Court for a reduction of his sentence. On November 4, 2019, the Warden unequivocally denied McDonel's request. *See* Ex. A.

---

[1]     McDonel received a seven-year sentence on the first § 924(c) count, and a 25-year sentence on each of the remaining four counts under § 924(c) because these were "second or subsequent conviction[s]" within the meaning of § 924(c)(1)(C).

**ARGUMENT**

The Court now has the authority to reduce McDonel's sentence based on the extraordinary and compelling circumstances presented in his case.  First, it has jurisdiction to hear this motion because more than 30 days have passed since the Warden received McDonel's request, and the Director of the Bureau of Prisons ("BOP") has not filed a motion with this Court.  Second, the changes to 18 U.S.C. § 3582(C)(1)(A)(i) made by the First Step Act have finally vested *the Court* with the authority to decide when extraordinary and compelling circumstances warrant a sentence reduction.  Such circumstances clearly exist in this case.  Third, the factors a court must consider in determining an appropriate sentence also weigh strongly in favor of a substantially lower sentence for McDonel.

**A.  The Court Has Jurisdiction to Grant Release for "Extraordinary and Compelling Reasons"**

The Compassionate Release statute was first enacted as part of the Comprehensive Crime Control Act of 1984.  It provided that a district court could modify a final term of imprisonment in four situations, one of which was the existence of "extraordinary and compelling reasons" warranting the reduction, as determined by the sentencing court.  Although the courts were given the final authority to reduce a sentence, the statute imposed a gatekeeper—that authority could be invoked only upon a motion by the Director of the BOP.  Without such a motion, sentencing courts were powerless to reduce a prisoner's sentence, even if the court concluded that extraordinary and compelling reasons warranted a reduction.  18 U.S.C. § 3582(c)(1)(A)(i); *see also* P.L. 98-473 (H.J.Res. 648), P.L. 98-473, 98 Stat. 1837 (Oct. 12, 1984).

This regime changed when Congress enacted the First Step Act, which amended § 3582(c)(1)(A).  *See* P.L. 115-391, 132 Stat. 5194, at § 603 (Dec. 21, 2018).  Under the amended statute, a court can now reduce a sentence for "extraordinary and compelling reasons" not only if

the Director of the BOP files a motion requesting such relief, but also "upon motion of the defendant," if the defendant has fully exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days have elapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier.  18 U.S.C. § 3582(c)(1)(A).  *See also United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *3 (S.D. Tex. June 17, 2019) ("[u]nder the newly amended § 3582(c)(1)(A) [the defendant] has standing to bring this motion because more than 30 days elapsed between his reduction-in-sentence request to the warden and a response."); *United States v. Cantu-Rivera*, No. CR H-89-204, 2019 WL 2578272, at *1 (S.D. Tex. June 24, 2019) (defendant's "petition . . . meets the requirement of a lapse of 30 days from the receipt by the warden of the defendant's facility . . . The Court therefore has the authority to address the motion of the defendant.").  As noted above, McDonel submitted his request to the warden on October 2, 2019.

As of the date of this filing, more than thirty days have elapsed since receipt of the request by the warden, and the BOP has not acted on his request.  Accordingly, McDonel is entitled to bring his motion directly to the Court pursuant to § 3582(c)(1)(A), and this Court is vested with the jurisdiction to rule on the requested relief.

**B. The Relief Requested Here Is Consistent with the Text of the Statute and the Sentencing Commission's Policy Statement**

1. *Congress Did Not Limit "Extraordinary and Compelling Reasons" to a Specific, Enumerated Set of Circumstances*

Congress did not define what would constitute an "extraordinary and compelling reason" warranting a reduction of a sentence under § 3582(c).  Indeed, the legislative history confirms that it intended to grant federal sentencing courts broad discretion to make those determinations on a case-by-case basis, and to reduce fundamentally unfair sentences where such reasons exist.

4

Congress's initial goal in passing the Comprehensive Crime Control Act was to abolish federal parole and create a "completely restructured guidelines sentencing system."  S. Rep. No. 98-225, at 52, 53 n.74 (1983).  But with the elimination of parole as a corrective measure in cases where early release is warranted, Congress recognized the need for an alternative review process.  It therefore allowed for judicial reduction of certain sentences under § 3582(c):

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances.  These would include cases of severe illness, cases in which *other extraordinary and compelling circumstances* justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defendant was convicted have been later amended to provide a shorter term of imprisonment.

*Id*. at 55–56 (emphasis added).  Put differently, rather than having the Parole Commission review every federal sentence, Congress decided to let sentencing courts decide, in a far narrower band of cases, that is, those presenting extraordinary and compelling circumstances, that "there is a justification for reducing a term of imprisonment."  *Id*. at 56.

The situations listed in § 3582(c) were thus intended to serve as "safety valves for modification of sentences," enabling sentence reductions where justified by factors that previously could have been addressed through the (now abolished) parole system.  *Id.* at 121.  This approach was intended to keep "the sentencing power in the judiciary where it belongs," rather than with a federal parole board, and permitted "later review of sentences in particularly compelling situations."  *Id.* (emphasis added).  Because Congress chose not to define what constitutes "extraordinary and compelling reasons," the mandate was simple:  courts should exercise their discretion in particular cases to determine whether such reasons "justify a reduction of an unusually long sentence."  S. Rep No. 98-225, at 55–56 (1983).

Unfortunately, the establishment of the BOP as a gatekeeper effectively eliminated the safety valve.  The BOP, which is part of the Department of Justice, hardly ever opened the gate.[2] To address this reality, Congress, through the First Step Act, now allows direct access to the sentencing court once an inmate's request to the BOP has been exhausted.

2.  *The U.S. Sentencing Commission Has Not Limited "Extraordinary and Compelling Reasons" for Compassionate Release to Medical, Age-Related, or Family Circumstances*

When enacting § 3582(c), Congress delegated the responsibility for expounding upon what constitutes "extraordinary and compelling reasons" to the U.S. Sentencing Commission (the "Commission").  *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* 28 U.S.C. § 992(a)(2) (the Commission shall promulgate general policy statements regarding "the sentence modification provisions set forth in section[ ] . . . 3582(c) of title 18").  The resulting policy statement by the Commission sets forth the following factual considerations:  (i) the medical condition of the defendant (including terminal illness and other serious conditions and impairments); (ii) the age of the defendant (for those 65 and older with serious deterioration related to aging who have completed at least 10 years or 75 percent of the term of imprisonment); (iii) the family circumstances of the

---

[2]  *See, e.g.*, *The Answer is No:  Too Little Compassionate Release in US Federal Prisons*, Human Rights Watch, 2 (Nov. 2012), https://www.hrw.org/sites/default/files/reports/ us1112ForUploadSm.pdf (noting that between 1992 and 2012, the average annual number of prisoners who received compassionate release following a motion by the BOP was less than two dozen).  The BOP's recent rote denial of McDonel's request for a BOP motion under § 3582(c)(1) proves this point once again.  Over a two-week period when he was 19 years old, this defendant committed a string of small-time, small-money robberies in which no one was seriously injured.  Yet the BOP's denial concludes by saying to McDonel that "[r]eleasing you prior to March 4, 2103, would greatly minimize the severity of the offense." Ex. A.  That obviously template-based conclusion is both ridiculous and a shameful abdication of responsibility.  No wonder Congress gave up on the BOP as gatekeeper for such motions.

defendant (where a child's caregiver or spouse dies or becomes incapacitated without an alternative caregiver); and (iv) "other reasons."  U.S.S.G. § 1B1.13, Application Note 1(A).  The fourth category specifically includes "an extraordinary and compelling reason other than, or in combination with," the first three.  *Id.*  Additionally, the commentary makes clear that the extraordinary and compelling reasons "need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment."  U.S.S.G. § 1B1.13, Application Note 2.  In other words, even if an "extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court, [that fact] does not preclude consideration for a [sentence] reduction." *Id.*

As the above language makes clear, extraordinary and compelling reasons for a sentence reduction may exist even where an inmate is not elderly, ill, or facing dire, caregiver-related family circumstances.  And though the policy statement—which has not been amended since the passage of the First Step Act—vests the Director of the BOP with the authority to determine when such "other reasons" might warrant a reduction in a particular case, that language is inconsistent and cannot be reconciled with the revised statute, which permits a defendant to bring a § 3582 motion to the Court without any response from the BOP or even if the BOP expressly decides that no reasons warrant a reduction of sentence.  In short, that aspect of the commentary is not binding on the courts. It is inconsistent with the text and the undisputed purpose of the First Step Act, which, "[l]ike other sentencing statutes . . . trumps the Guidelines." *Dorsey v. United States*, 567 U.S. 260, 266 (2012).  Congress has finally removed the BOP's blessing as a prerequisite to relief under § 3582(c).  That law trumps § 1B1.13's requirement of a BOP motion and divests the BOP of its previous authority to determine whether extraordinary and compelling reasons warrant a sentence reduction in a particular case. *See also United States v. Da Cai Chen*,

7

127 F.3d 286, 291 (2d Cir. 1997) (commentary that relates to a statute, or to a guideline that mirrors a statute (as here), is not entitled to deference); *United States v. Pierninanzi*, 23 F.3d 670, 683 (2d Cir. 1994).

Indeed, at least seven district courts, since the passage of the First Step Act, have observed that §1B1.13 "has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release," *United States v. McGraw*, No. 2:02-cr-00018 (LJM)(CMM), 2019 WL 2059488, at *2 (S.D. Ind. May 9, 2019), and "[b]ecause the current version of the Guideline policy statement conflicts with the First Step Act, the newly-enacted statutory provisions must be given effect." *Cantu-Rivera*, 2019 WL 2578272 at *2 n.1. *See also Cantu*, 2019 WL 2498923 at *4 ("Given the changes to the statute, the policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the appropriate use of the sentence-modification provisions under § 3852."); *United States v. Valdez*, No. 3:98-cr-0133–01-HRH, 2019 WL 7373023, at *2 (D. Alaska Dec. 31, 2019) ("This court concludes that it is no longer bound to look to the director of the Bureau of Prisons for a definition of extraordinary and compelling reasons beyond application note 1(A) through (C)."); *United States v. Schmitt*, No. CR12-4076-LTS, 2020 WL 96904, at *3 (N.D. Iowa Jan. 8, 2020); *United States v. Urkevich*, 2019 WL 6037391, at * 3 (D. Neb. Nov. 14, 2019); *United States v. Brown*, 4:05-CR-00227-1, 2019 WL 4942051, at *4 (S.D. Iowa Oct. 8, 2019).  One court has also expressly clarified that "there is no indication in the text or the USSC's policy statements that the identity of the movant should affect the meaning of the phrase 'extraordinary and compelling reasons,'" concluding that "U.S.S.G. § 1B1.13's descriptions of 'extraordinary and compelling reasons' remain current, even if references to the identity of the

moving party are not." *See United States v. Ebbers*, No. 02-CR-1144-3, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020).

The Court's authority to reduce McDonel's sentence is not only consistent with the statute, but also with the language in the policy statement, which makes clear that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction)" and encourages the filing of a motion for compassionate release where a defendant "meets any of the circumstances set forth in [the] Application Note." *See Brown*, 2019 WL 4942051, at *4 (observing the courts' role in "[r]eleasing defendants from incarceration is a delicate business—although not any more so than incarcerating them initially."). As mentioned above, in amending the language of 18 U.S.C. § 3582(c)(1)(A), Congress finally empowered *courts* to make this critical determination, even in the face of a BOP determination that a defendant's case is not extraordinary or compelling. *See, e.g.*, *Ebbers*, 2020 WL 91399, at *4, n.6 ("[T]he First Step Act reduced the BOP's control over compassionate release and vested greater discretion with the courts. Deferring to the BOP would seem to frustrate that purpose.").

Thus, just a few months ago, a district court in Texas held as follows:

> [T]he correct interpretation of § 3582(c)(1)(A)—based on the text, statutory history and structure, and consideration of Congress's ability to override any of the Commission's policy statements 'at any time' [. . .]—is that when a defendant brings a motion for sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. N.1(A)-(C) warrant granting relief.

*Cantu*, 2019 WL 2498923 at *5. *See also Urkevich*, 2019 WL 6037391, at *3 ("this Court may use Application Note 1(D) as a basis for finding extraordinary and compelling reasons to reduce a sentence" beyond those listed in (A) through (C)). This Court therefore may make an

independent assessment of McDonel's case in considering whether extraordinary and compelling reasons warrant the reduction of his sentence.[3]

3. *Extraordinary and Compelling Circumstances Warrant a Reduction in McDonel's Sentence*

The practice of "stacking" enhanced § 924(c) charges in a first offense was condemned for years by the Sentencing Commission, the Judicial Conference of the United States, and others. Finally, in December 2018, Congress eliminated this practice by amending § 924(c). The Government can no longer invoke the dramatically enhanced mandatory consecutive sentences prescribed for "second or successive" § 924(c) convictions in the same case in which the first such conviction is obtained. From now on, those staggering sentences will be permissible only after a truly "subsequent" conviction. Notably, the fact that this amendment was titled a "Clarification of Section 924(c)" makes clear that § 924(c) was never intended by Congress to result in sentences like the one at issue here. Because of this, the indefensibly harsh, stacked sentences under § 924(c), like the one Mr. McDonel received, have been considered as a factor when evaluating whether a defendant's circumstances are extraordinary and compelling. *See Brown*, 2019 WL 4942051, at *4 (considering, among other things, the defendant's "stacked" sentence § 924(c) in determining whether compassionate release should be granted and

---

[3]   *See also Cantu*, 2019 WL 2498923 at *4 ("Given the changes to the statute, the policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the *appropriate use* of sentence-modification provisions under § 3582."); *Cantu-Rivera*, 2019 WL 2578272, at *2 n.1 (finding authority to determine that defendant was entitled to relief under the catch-all provision in the commentary to § 1B1.13 because the "current policy statement predates the enactment of the First Step Act and is not likely to be amended within the foreseeable future due to lack of a sufficient number of serving members of the Sentencing Commission."); *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019) ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i).").

noting that the sentence was "far greater than was necessary to achieve the ends of justice" (citation omitted)); *see also Urkevich*, 2019 WL 6037391, at *4 (finding extraordinary circumstances in "the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed").

In addition, when deciding a motion for relief under 18 U.S.C. § 3582(c)(1)(A)(i), a court should consider other factors, including the history and characteristics of the defendant, the sentencing disparities with his co-defendants, and other factors that bear on who the defendant is today. *See* U.S.S.G. § 1B1.13 (requiring consideration of, inter alia, the factors set forth in 18 U.S.C. § 3553(a); *see also Urkevich*, 2019 WL 6037391, at *4 (considering § 3553(a)(2)(A) (need for "just punishment") and § 3553(a)(6) ("need to avoid unwarranted sentence disparities among" similarly situated defendants) when finding "extraordinary and compelling reasons" for reduction in sentence); *United States v. Walker*, No. 1:11 CR 270, 2019 WL 5268752, at *2 (N.D. Ohio Oct. 17, 2019) (considering "post-offense developments" under § 3553(a) "in order to take into account the most up-to-date picture of the defendant's history and characteristics" (internal quotation omitted)); *Cantu-Rivera*, 2019 WL 2578272, at *2 (the court considered rehabilitation and the "unwarranted [sentencing] disparities among defendants" in determining resentencing was appropriate). As set forth below, these factors establish the sort of "extraordinary and compelling reasons" that warrant a reduction of McDonel's 107-year sentence.

### C. The Relevant Factors Weigh Strongly in Favor of a Sentence Reduction

In deciding McDonel's request for a sentence reduction, the Court must determine whether, after considering the factors set forth in 18 U.S.C. § 3553(a), extraordinary and compelling circumstances warrant that relief, and, if they do, that McDonel is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g). U.S.S.G. §

1B1.13.    As explained below, all of the § 3553(a) factors weigh strongly in favor of relief in McDonel's case, and he poses no danger.

    1.  *The § 3553(a) Factors Weigh in McDonel's Favor*

This Court must next weigh the factors set forth in 18 U.S.C. § 3553(a) to determine whether McDonel's request for a sentence reduction should be granted.  While his crimes were serious, he has accepted responsibility for them and he has already endured serious punishment for them, as evidenced by the disparity between his sentence and those of his co-defendants.

Section § 3553(a)(2) requires a court to consider the necessity of the sentence imposed to reflect the seriousness of the offense, afford adequate deterrence, protect the public from McDonel, and to provide McDonel with rehabilitative services.  These factors weigh strongly in favor of the relief requested here.  The over 12 years McDonel has already served in prison have been transformative for him.   He has dedicated himself to rehabilitation, personifying the objectives of § 3553(a)(2) that incarceration "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment."  McDonel has an extensive inmate education transcript.  He has held steady jobs working in the jail kitchen and as an orderly in his unit.  He has logged over 500 hours in educational courses and successfully graduated from "The 7 Habits of Highly Effective People" in May 2016.  This factor weighs heavily in support of granting relief. *See Cantu-Rivera*, 2019 WL 2578272, at *2 (recognizing the "extraordinary degree of rehabilitation" Mr. Cantu-Rivera accomplished and caring for other inmates as factors justifying the reduction in his sentence).

Finally, this Court should consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.   18 U.S.C. § 3553(a)(6); *see also Cantu-Rivera,* 2019 WL 2578272, at *2 (finding a reduced sentence would "also avoid unwarranted disparities among defendants with similar records

convicted of similar conduct" because defendant's time served "exceeds the sentences imposed on other members of the drug-trafficking conspiracy."). This factor, too, weighs strongly in favor of a sentence reduction for McDonel. There are glaring disparities between McDonel's sentence and those of his co-conspirators.

2. *McDonel Is Not a Danger*

If McDonel was released, he would not pose a danger to the community. His criminal conduct occurred when he was so young. We respectfully ask the Court to place great weight on the fact that even though he was (barely) old enough to be prosecuted as an adult, 19-year-olds are different developmentally from older offenders. Neuroscience researchers have established that the brain—including the regions responsible for self-control and judgment—continue to develop into a person's twenties. We commend to the Court the publication of the MacArthur Foundation Research Network on Law and Neuroscience entitled "*How Should Justice Policy Treat Young Offenders?*"[4] It underscores two important things in this case. One is that delinquency in adolescents (and that term included McDonel at the time the offenses were committed) "is usually not an indication of an indelible personality trait." *Id.* at 2. The other is there is every reason to believe McDonel will have aged out of violent crime by the time he is released if you agree to our request and he is resentenced. *Id.*[5] Neuroscience researchers have also demonstrated the association between low socioeconomic status ("SES") and development in the brain regions responsible for goal-oriented behavior, inhibition, and self-monitoring.

---

[4]   MacArthur Foundation Research Network on Law and Neuroscience, *How Should Justice Policy Treat Young Offenders?* Law and Neuro (Feb. 2017), http://www.lawneuro.org/adol_dev_brief.pdf.

[5]   *See also* Rachel Elise Barkow, *Prisoners of Politics* 44–45 (2019) ("Most juveniles discontinue their criminal activity after brief experimentation with it.").

Therefore, the combination likely limited McDonel's ability to appreciate the consequences of his actions at the time he committed them.[6]

McDonel was impressionable and made grave errors of judgment during a difficult time in his young life. He had a tumultuous childhood. He was raised by his single mother, Urenda Allison, who was diagnosed as a diabetic as a child. McDonel spent most of his childhood helping his mother get treatments and caring for his half-brother, until his mother passed away when McDonel was 13 and his half-brother was eight. McDonel, who considered his mother to be his best friend, was devastated by her passing and began to get in trouble. He went to live with his father after his mother's death. His father tried to help McDonel but was unsuccessful.

As mentioned above, research in the field of neuroscience and social science data support our argument that McDonel, today a 32-year old man, has a dramatically reduced disposition toward criminal behavior. In addition to the authorities cited above, in a study funded by the Department of Justice, researchers opined that, "unlike logical-reasoning abilities, which appear to be more or less fully developed by age 15[,] psychological capabilities that improve decision making and regulate risk taking—such as impulse control, emotion regulation, delay of gratification, and resistance to peer influence—continue to mature well into young adulthood."[7]

---

[6]   *See* Katarzyna Jednoro et al., *The Influence of Socioeconomic Status on Children's Brain Structure* 8 (2012) ("It is already well known that SES has effects on cognitive development."); *see also* Yusuke Moriguchi & Ikuko Shinohara, *Socioeconomic Disparity in Prefrontal Development During Early Childhood* 1 (2019) ("Socioeconomic status (SES) is an important factor influencing cognitive, social and brain development. Recent studies have consistently shown poor performance on executive function (EF) tasks by low-SES children compared with that by middle- and high-SES children during childhood and adolescence. EF comprises several cognitive domains such as inhibition, cognitive shifting and working memory which facilitate goal-directed control of thoughts and actions.").

[7]   James C. Howell et al., Bulletin 5: *Young Offenders and an Effective Response in the Juvenile and Adult Justice Systems: What Happens, What Should Happen, and What We Need to Know* 17 (2013), https://www.ncjrs.gov/pdffiles1/nij/grants/242935.pdf.

The study found that "adolescents and young adults simply do not have the physiological capacity of adults over age 25 to exercise judgment or control impulses" and concluded that policymakers should implement a "categorical rule of youthfulness as a mitigating factor in sentencing" as opposed to "individualized discretion." *Id.* at 18, 29.

The evolution of McDonel's character during his over 12-year incarceration further precludes a finding that he poses a danger. He has been a model inmate and has demonstrated a determination to turn his life around. He has held steady jobs working in the prison kitchen and as an orderly in his unit. He has logged over 500 hours in educational courses, including financial and business planning classes, various computer classes, a legal research class, and a literacy program. He graduated from "The 7 Habits of Highly Effective People" program in May 2016. He has been trying to enroll in the prison's General Educational Development ("GED") program, but has been unable to do so because the limited spots in the program have been given to inmates with shorter sentences and a higher likelihood of release. McDonel does not have a significant disciplinary record, with only a few minor infractions when he was first incarcerated and another two years ago.[8] He is sincerely remorseful for the crimes he committed, and accepts full responsibility for his conduct.

McDonel has a strong family support system and will have a place to live if granted relief. He is still extremely close with his family despite being incarcerated far away from them in California. His father is an engineer at an Army Base in Maryland and lives with his

---

[8]  Two years ago, McDonel was found with synthetic marijuana in his pocket, which he obtained after he learned that his uncle, whom he was extremely close to, passed away. After he served his time in solitary for the drug infraction, McDonel asked to be transferred to another unit where he could be close to the people who have been a positive influence for him in jail. However, his request was denied, and he was instead sent back to solitary for months until he was transferred to another prison.

girlfriend, Sylvia Kelley.  His step-father, Rodrick Porter Jr., has agreed that McDonel can live with him upon his release from prison.  In addition to his maternal half-brother, whom he is still close to, McDonel has three paternal half-sisters, one step-sister, and one step-brother.  All are very supportive of him.  One of McDonel's sisters works in a church and is married to the pastor's son.  His other siblings are all young and eager to be reunited with their brother, who has been incarcerated for most of their lives.

Finally, McDonel has also been extended an offer of employment upon release and has plans for himself upon release.  His close family friend, Terrence Mosely, has offered him a job at his cleaning company, Reliable Carpet Cleaning Service, in Eastern Michigan.  He also plans to obtain his GED and apply for the business program at Wayne State University in Detroit. Once he completes his studies, he hopes to start his own business in real estate and construction. He also wants to use what he has learned from his mentors in jail and become a motivational speaker for young individuals, so he can share his story and serve as an example for others.

In short, McDonel is not a danger to the community; rather, his conduct while incarcerated and plans for the future demonstrate that he would eagerly contribute to society upon release.

### D.  McDonel Is Deserving of Mercy

With the passage of the First Step Act, Congress emphasized the imperative of reducing unnecessary incarceration and avoiding unduly punitive sentences that do not serve the ends of justice. *United States v. Simons*, No. 07-CR-00874, 2019 WL 1760840, at *8 (E.D.N.Y. Apr. 22, 2019).  McDonel's conduct and initiative during his incarceration demonstrate rehabilitation.

As stated above, time and prison have helped McDonel grow and become an inspiration to those around him.  He has been a model inmate, demonstrating a determination to turn his life

around.  He has held steady jobs and logged over 500 hours in educational courses.  In addition, as described above, he has a strong support network awaiting him if his sentence is reduced.

Finally, McDonel has expressed profound remorse for his offenses.  He understands that he made terrible decisions and that going to prison gave him time to reflect, mature, and evolve into a better man.  He has spent the last twelve years repairing the broken pieces of his life, and he has made a permanent commitment to help others do so as well.

In sum, we respectfully submit that McDonel is deserving of the relief we seek.

## CONCLUSION

Congress never intended to permit, let alone to mandate, the excessive punishment McDonel received in this case.  It has now given the Court the power to grant McDonel relief from that sentence.  McDonel respectfully requests that the Court take this opportunity to grant a reduction in his sentence based on extraordinary and compelling reasons.

DATED:        New York, New York
              January 13, 2020


                          DEBEVOISE & PLIMPTON LLP

                          By: /s/ *John Gleeson*
                          John Gleeson
                          Lauren Dolecki
                          Catherine M. Walsh
                          Erica C. Reich
                          jgleeson@debevoise.com
                          lmdolecki@debevoise.com
                          cwalsh@debevoise.com
                          ereich@debevoise.com
                          919 Third Avenue
                          New York, New York 10022
                          (212) 909-6000

                          *Attorneys for Robert McDonel*

17

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 13, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the attorneys of record.

Respectfully Submitted,

By:  /s/ *John Gleeson*
John Gleeson
Lauren Dolecki
Catherine M. Walsh
Erica C. Reich
DEBEVOISE & PLIMPTON
jgleeson@debevoise.com
lmdolecki@debevoise.com
cwalsh@debevoise.com
ereich@debevoise.com
919 Third Avenue
New York, New York 10022
(212) 909-6000

*Attorneys for Robert McDonel*