UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
------------------------------------- X
UNITED STATES OF AMERICA, :
                                      :
                                      : 2:07-CR-20189-DML-RSW-1
      - against –              :
                                      : Motion to Reduce Sentence
                                      : Pursuant to 18 U.S.C.
                                      : § 3582(c)(1)(A)(i)
ROBERT MCDONEL, :
                                      :
                Defendant. :
------------------------------------- X

## REPLY MEMORANDUM IN SUPPORT OF MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

DEBEVOISE & PLIMPTON LLP

John Gleeson
Lauren Dolecki
Catherine M. Walsh
Erica C. Reich
jgleeson@debevoise.com
lmdolecki@debevoise.com
cwalsh@debevoise.com
ecreich@debevoise.com
919 Third Avenue
New York, New York 10022
(212) 909-6000

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1

DISCUSSION .................................................................................................... 1

    A.    The Court Has the Authority to Reduce McDonel's Sentence .............. 1

    B.    McDonel Would Not Pose a Danger to His Community if Released. .................... 6

CONCLUSION ................................................................................................... 7

## TABLE OF AUTHORITIES

**CASES**

*Dorsey v. United States*,
 567 U.S. 260 (2012) .................................................................................................2

*United States v. Ebbers*,
 No. 02-CR-1144-3 (VEC), 2020 WL 91399 (S.D.N.Y. Jan. 8, 2020) ..................3, 4

*United States v. Lynn*,
 No. 89-0072-WS, 2019 WL 3805349 (S.D. Ala. Aug. 13, 2019) ............................4

*United States v. Maumau*,
 No. 08-CR-00758-TC-11, 2020 WL 806121 (D. Utah Feb. 18, 2020) ........3, 4, 5, 6

*United States v. McGraw*,
 No. 2:02-CR-00018-LJM-CMM, 2019 WL 2059488 (S.D. Ind. May 9, 2019) .......4

*United States v. Shields*,
 No. 12-cr-00410-BLF-1, 2019 WL 2359231 (N.D. Cal. June 4, 2019) ...................3

*United States v. Shields*,
 No. 12-cr-00410-BLF-1, 2019 WL 2645028 (N.D. Cal. June 27, 2019) .................3

*United States v. Washington*,
 No. 13-020-DCR, 2019 WL 6220984 (E.D. Ky. Nov. 21, 2019) ............................4

*United States v. Willingham*,
 No. CR113-010, 2019 WL 6733028 (S.D. Ga. Dec. 10, 2019) ...............................4

*United States v. Willis*,
 382 F. Supp. 3d 1185 (D.N.M. 2019) ......................................................................4

*United States v. York*,
 Nos. 3-11:CR-76, 3:12-CR-145, 2019 WL 3241166 (E.D. Tenn. July 18, 2019) ....4

**STATUTES**

18 U.S.C. § 3582(c)(1)(A) ................................................................................. *passim*

U.S.S.G. § 1B1.13 ..........................................................................................1, 2, 3, 4, 5

S. Rep. No. 98-225 (1983) ..........................................................................................6

## PRELIMINARY STATEMENT

While the Government disagrees with numerous arguments set forth in our motion, it does not contest that Robert McDonel received a mandatory life sentence (107 years and 1 month) based on his involvement in five robberies over two weeks when he was 19. The Government does not contest that if McDonel were sentenced today, he would receive a small fraction of that sentence. Nor does the Government contest that it offered McDonel a 20-year plea deal twice—once before trial and a second time after he was convicted.

The Government raises three main points in opposing the relief we seek. First, it argues that even though the First Step Act requires courts to ignore the parts of the applicable policy statement that require a motion by the Bureau of Prisons ("BOP"), it left the BOP in charge of the one ground for relief on which McDonel relies. However, as at least eight district courts have held since the passage of the First Step Act, this contorted view of the amended 18 U.S.C. § 3582(c)(1)(A)(i) finds no support in the text of the relevant statutes, their legislative history, or logic. Second, it argues that McDonel is seeking a "back door" retroactive application of Section 403 of the First Step Act, which he is not; rather, McDonel seeks relief under the amended § 3582(c)(1)(A)(i). Finally, the Government contends that relief under the compassionate release statute is not warranted due to McDonel's disciplinary history in prison. However, McDonel is not a danger to the community, and the infractions at issue are certainly not a basis for requiring McDonel to serve the rest of his life in prison. We urge this Court to exercise its authority to administer justice by reducing Mr. McDonel's sentence.

## DISCUSSION

### A. The Court Has the Authority to Reduce McDonel's Sentence

The Government erroneously argues that the applicable policy statement, U.S.S.G. § 1B1.13, provides no basis for a sentence reduction in this case. *See* Government's Opposition

("Opp'n") at 6-8, ECF No. 220. However, a plain reading of the revised text of § 3582(c)(1)(A) makes clear that a BOP motion is no longer a prerequisite for judicial consideration of a request for compassionate release. In response to the BOP's virtual abdication of its responsibility to make compassionate release motions when warranted, Congress gave defendants the right to bring such a motion directly to the court even when, as is almost always the case, the BOP refuses to make a motion on their behalf. The Government does not and cannot contend otherwise, because the First Step Act, "[l]ike other sentencing statutes, . . . trumps the Guidelines." *Dorsey v. United States*, 567 U.S. 260, 266 (2012). Even though the first words of the relevant policy statement, U.S.S.G. § 1B1.13, require a "motion of the Director of the Bureau of Prisons" before *any* sentence reduction can be ordered under § 3582(c)(1)(A), the Government concedes that prerequisite must be ignored. Though the commentary also requires such a motion, *id.* at Application Note 4, the Government concedes that must be ignored as well. Opp'n at 3.

The Government contends that all of the references to the BOP in the policy statement and the application notes can properly be ignored except one: the mention in Application Note 4 that a sentence reduction can be ordered based on extraordinary and compelling reasons only when the BOP determines such reasons exist in the case. Opp'n at 4. That, the Government contends, requires this Court to follow the BOP's Program Statement to determine whether the extraordinary and compelling circumstances in this case warrant a sentence reduction in the eyes of the BOP. This argument cannot be squared with the text, the purpose, or the logic of the First Step Act, and the case law the Government cites in support is inapposite.

*First*, there is no textual basis in the amended statute for such a carve-out from the judicial authority conferred by the First Step Act. There is nothing in the statute or its legislative history that suggests an intent to leave the BOP *partly* in charge of motions under §

2

3582(c)(1)(A). *Second*, without any explanation, the Government implicitly asserts that Congress, which was determined to *increase* use of compassionate release, would leave the BOP in charge of motions based on extraordinary and compelling circumstances even though the BOP has *never* found such circumstances (beyond age, infirmity, and caregiver status) to be present. This cannot be squared with the purpose of the First Step Act. *See United States v. Maumau*, No. 08-CR-00758-TC-11, 2020 WL 806121, at *3 (D. Utah Feb. 18, 2020) (U.S.S.G. § 1B1.13(1)(D) as currently written "allocates significant discretion to the Director of the Bureau of Prisons, which was consistent with pre-First Step Act law but is no longer appropriate, given Congress's decision to remove the Director's control over compassionate release motions."). The Commission itself also explicitly states in the Application Note that "court[s] [are] in a unique position to determine whether the circumstances warrant a reduction." Application Note 4.

*Third*, the case law the Government relies on does not support its argument, and the majority of other district courts that have addressed this issue agree with our position. *See Maumau*, 2020 WL 806121, at *4. The Government's reliance on *United States v. Ebbers* for the proposition that "Congress in fact only expanded access to the courts; it did not change the standard," Opp'n at 9-10, is misplaced. In fact, *Ebbers* supports McDonel's position that contradictory portions of the policy statement have been displaced by the First Step Act.[1] No. 02-CR-1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) ("[T]his statement is at least partly anachronistic because it has not yet been updated to reflect the new procedural innovations of the First Step Act."). McDonel does not argue that the bases on which sentence

---

[1] The Government's reliance on *United States v. Shields* is also misplaced. No. 12-cr-00410-BLF-1, 2019 WL 2359231, at *4 (N.D. Cal. June 4, 2019); *United States v. Shields*, No. 12-cr-00410-BLF-1, 2019 WL 2645028, at *2 (N.D. Cal. June 27, 2019) (originally finding that the language referring to the Director of the BOP in §1B1.13 should not be disregarded as outdated based on a misapprehension of a prior case, but then acknowledging that it misread the case, which did not speak on the issue.)

3

reductions may be granted under § 3582(c)(1)(A)(i) have changed—they have always included "other reasons" beyond medical condition, age, and family circumstances. Rather, with the amendments to the First Step Act, *the Court* now has the authority to determine whether extraordinary and compelling circumstances exist.[2] The cases the Government cites for the proposition that the "Commission's policies remain controlling," *see* Opp'n at 10, are inapposite because they do not address whether courts now have the authority to determine "other reasons" that are "extraordinary and compelling."[3] Further, *Ebbers* did not find that the policy statement was controlling—only that it was "helpful" in defining the standard. 2020 WL 91399, at *4.

As the Government concedes, numerous district courts across the country have observed that U.S.S.G. § 1B1.13 has not been updated to reflect the amendments to the compassionate release statute, and, given the conflict between the current version and the First Step Act, the revised statutory provisions are what must be given effect. Opp'n at 9. *See* Defendant's Motion ("Mot.") at 8-9, ECF No. 215. *See also Maumau*, 2020 WL 806121, at *4 (finding that "[u]nder the First Step Act, it is for the court, not the [BOP], to determine whether there is an

---

[2] The Government relies on *United States v. Lynn*, No. 89-0072-WS, 2019 WL 3805349 (S.D. Ala., Aug. 13, 2019), appeal dismissed, No. 19-3239 (11th Cir. Oct. 8, 2019), but that case fails even to consider that the First Step Act fundamentally changed the legal landscape within which the Guidelines operate. *See also United States v. Willingham*, No. CR113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) (following *Lynn* but acknowledging that, by the time it was decided, other district courts found the Application Note inapplicable).

[3] Many of the cases the Government cites instead consider whether relief is warranted under the medical condition, age, or caregiver status provisions. *See United States v. York*, Nos. 3-11:CR-76, 3:12-CR-145, 2019 WL 3241166, at *4-6 (E.D. Tenn. July 18, 2019) (granting motion based on defendant's medical condition); *United States v. Willis*, 382 F. Supp. 3d 1185, 1187-89 (D.N.M. 2019) (denying motion based on defendant's medical condition); *United States v. McGraw*, No. 2:02-CR-00018-LJM-CMM, 2019 WL 2059488, at *3-4 (S.D. Ind. May 9, 2019) (granting motion based on defendant's medical condition). And the fact that a district court found that rehabilitation on its own is not an extraordinary and compelling reason is inapposite here, where McDonel asks the Court to reevaluate his sentence based on multiple factors. *See* Opp'n at 17 (citing *United States v. Washington*, No. 13-020-DCR, 2019 WL 6220984, at *2 (E.D. Ky. Nov. 21, 2019)).

'extraordinary and compelling reason'"). The Government's only response to these eight district courts is to say they should be ignored because they fail "to respect the statutory text." Opp'n at 9. But these decisions are not only consistent with the amended statute and controlling Supreme Court precedent, they also comport with the language in the policy statement itself, which makes clear that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction)" and encourages the filing of a motion for a sentence reduction where a defendant "meets any of the circumstances set forth" in the Application Note. U.S.S.G. § 1B1.13, Application Note 4.

One district court already granted the relief McDonel seeks by finding that "[a] reduction in [the defendant's] sentence is warranted by extraordinary and compelling reasons, specifically the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed." *United States v. Urkevich*, No. 03-CR-37, 2019 WL 6037391, at *4 (D. Neb. Nov. 14, 2019). And earlier this week another district court similarly found that "the changes in how § 924(c) sentences are calculated is a compelling and extraordinary reason to provide relief." *Maumau*, 2020 WL 806121 at *7. This Court should join these district courts and hold that it has the authority to reduce McDonel's sentence based on extraordinary and compelling circumstances.

The Government also argues that McDonel is trying to apply the First Step Act's amendments to § 924(c) retroactively. *See* Opp'n at 12. In fact, § 3582(c)(1)(A)(i) provides the legal framework for McDonel's motion and the authority for the relief he seeks. That section states that "in *any* case"—not any case "except those that involve stacked sentences under § 924(c)"—presenting "extraordinary and compelling reasons warrant[ing]" a reduction in sentence, a court may reduce the sentence if such a reduction is consistent with the applicable

5

policy statement issued by the Sentencing Commission. § 3582(c)(1)(A)(i). *See also Urkevich*, 2019 WL 6037391, at *4; *Maumau*, 2020 WL 806121 at *7.

Although Congress chose not to make the amendment to § 924(c) retroactive to sentences that had already been imposed, that hardly renders it irrelevant. *See Maumau*, 2020 WL 806121 at *7 (finding that it was "not unreasonable for Congress to conclude that not <u>all</u> defendants convicted under § 924(c) should receive new sentences, even while expanding the power of the courts to relieve <u>some</u> defendants of those sentences on a case-by-case basis."). This Court can, and should, take into account Congress's determination that the mandatory sentencing regime to which McDonel was subjected—enhanced mandatory consecutive 25-year sentences imposed as "second or subsequent" § 924(c) convictions in a defendant's first § 924(c) case—was so harsh, and so unintended, that it had to end. It would be nonsensical to conclude that Congress intended to bar courts from considering this seismic amendment to § 924(c) in connection with applications for relief based on other statutes. The central purpose of the compassionate release statute was to permit judges to grant "a reduction of an unusually long sentence." S. Rep. No. 98-225, at 52, 53 n.74 (1983). The Government's insistence that the Court cannot consider the extreme length of McDonel's sentence as one factor in determining whether to reduce it not only makes no sense, it is contradicted by both the original purpose of the statute and the First Step Act's directive to increase its transparency and use.[4]

### B. McDonel Would Not Pose a Danger to His Community if Released.

Finally, the Government contends that even if the Court has the authority to reduce

---

[4] Contrary to the Government's assertion, we do not ask the Court to necessarily release McDonel immediately but rather to reduce Mr. McDonel's 107-year sentence. *See* Opp'n at 11; Mot. at 3. *See also Maumau*, 2020 WL 806121 at *8 ("the court need not actually modify the sentence to effectuate [defendant's] immediate release from prison. Rather, a downward adjustment may be made even if it results in [defendant's] continued incarceration.").

6

McDonel's sentence, it should not do so because McDonel is a danger to his community. That contention is difficult to square with its numerous offers of a 20–30 year plea deal. McDonel concedes that he incurred a number of minor disciplinary infractions in the first few years of his incarceration, and again in 2017, when he was found with synthetic marijuana in his pocket, after he learned that his uncle passed away. We do not seek to minimize this conduct, nor do we ask the Court to ignore it. But it is certainly no basis for requiring McDonel to spend the rest of his life in prison, and it presents no concern that cannot effectively be ameliorated by post-sentence supervision. McDonel has made positive efforts to turn his life around during his time in prison, and his accomplishments in that regard are significant. *See* Mot. at 12. McDonel is currently planning to take the GED exam this month.

McDonel respectfully asks this Court to holistically reevaluate his draconian sentence in light of his extensive rehabilitation, the sentencing disparity between him and his co-conspirators, the fact that he would receive a small fraction of his current sentence if prosecuted today, and the other factors bearing on the person McDonel has become.

## CONCLUSION

For all the foregoing reasons, McDonel's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) should be granted.

Dated: New York, New York
February 21, 2020

            DEBEVOISE & PLIMPTON LLP

            By: /s/ John Gleeson
            John Gleeson
            jgleeson@debevoise.com
            919 Third Avenue
            New York, New York 10022
            (212) 909-6000

            *Attorney for Robert McDonel*

## CERTIFICATE OF SERVICE

I certify that on February 21, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the attorneys of record.

Respectfully Submitted,

By: /s/ *John Gleeson*
John Gleeson
DEBEVOISE & PLIMPTON
jgleeson@debevoise.com
919 Third Avenue
New York, New York 10022
(212) 909-6000

*Attorney for Robert McDonel*