UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                          Case Number 07-20189
v.                                           Honorable David M. Lawson

ROBERT McDONEL,

        Defendant.
_____/

## ORDER GRANTING MOTION TO REDUCE SENTENCE

      Defendant Robert McDonel, then 21 years old, was sentenced to over 100 years in prison in 2008 after engaging in a spree of auto parts store robberies using a handgun. That extraordinarily harsh sentence was the product of a statutory sentencing scheme that required enhancing and stacking sentences for multiple firearm brandishing offenses even when the crimes were committed as part of the same episode and charged in a single indictment. Congress since has corrected that Draconian measure, but the legislation does not help McDonel, as the amendment is not retroactive. He asks the Court for relief under 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239, which allows a sentence reduction for "extraordinary and compelling reasons." The gross disparity created by the legislative changes, which mitigated the harshness in the sentencing scheme to which McDonel was subjected, coupled with McDonel's youth and rehabilitative efforts, qualify as extraordinary and compelling reasons under section 3582(c)(1)(A)(i). Other factors that the Court also must consider favor relief. The motion will be granted.

I.

      Over the span of two weeks in November 2006, Robert McDonel and co-conspirators Johnnie Cromer, Frederick Atkins, Maurice Woodley, and Kenneth Brown robbed five businesses

— mostly auto-part stores — at gunpoint in Detroit, Michigan. Police arrested Woodley first, then McDonel in late 2006, just as he was preparing to rob a sixth business. McDonel was 19 years old at the time.

Cromer and Atkins robbed three more stores after McDonel's arrest. During one of the subsequent robberies in April 2007, someone fired a gun during a struggle between Atkins and a customer. Atkins sprinted from the store but dropped his cell phone on the way. Police used that phone to track down Atkins and arrest him. Then, acting under a warrant, police arrested Cromer on August 2, 2007.

A federal grand jury charged McDonel with five counts of Hobbs Act robbery in violation of 18 U.S.C. § 1951 and five counts of brandishing a firearm during and in relation to those robberies in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Cromer and Adkins were added to the case in two superseding indictments.

Before trial, the government offered McDonel a plea deal where it would recommend a 20-year sentence if he cooperated and 30 years if he did not cooperate. McDonel refused the offer, electing to try his case instead.

On March 31, 2008, a jury convicted McDonel on all counts. After trial, the government again offered McDonel a plea deal of 20 years imprisonment if he provided information related to other crimes, but he also refused that offer.

On August 6, 2008, the Court sentenced McDonel to a total sentence of 1,285 months (107 years and 1 month) in prison, broken down as follows: one month each for the Hobbs Act robberies to run concurrently, 84 months (seven years) for the first section 924(c) conviction, and 300 months (25 years) each for the remaining four section 924(c) convictions all to run consecutively to each other. The latter four section 924(c) convictions carried mandatory minimum sentences of

25 years because they were "second or subsequent" convictions within the meaning of section 924(c)(1)(C) as then in effect.

McDonel's co-conspirators fared much better. Woodley and Cromer testified against McDonel and Atkins at their trial in exchange for reduced sentences. The Court sentenced Woodley to four years in prison, and Cromer received 20 years.

On October 2, 2019, McDonel submitted a written request to the Warden of United States Penitentiary (USP) at Atwater, asking that the Warden move the Court for a reduction of his sentence under 18 U.S.C. §3582(c)(1)(A)(i). The Warden declined McDonel's request in writing on November 4, 2019. This motion followed.

So far, McDonel has served about 13 years of his sentence. He likely will not live long enough to serve all of it. His projected release date is November 21, 2098.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid*. "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid*. (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and

compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). McDonel relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, by following a procedure that the court of appeals has distilled into three steps. *First*, consider whether "extraordinary and compelling reasons warrant such a reduction." *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Third*, "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (en banc) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it"). That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP. *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

More recently, the court of appeals took the explanation a step further. In *United States v. Elias*, --- F.3d ---, No. 20-3654, 2021 WL 50169 (6th Cir. Jan. 6, 2021), the court ascribed Congress's amendment of section 3582(c)(1) to the BOP's "rare[]" exercise of its power to move

for sentence reductions, that "the program was plagued by mismanagement," and that "the BOP 'ha[d] no timeliness standards for reviewing . . . requests.'" 2021 WL 50169 at *1 (quoting *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020)). It reaffirmed *Jones*'s holding "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Id.* at *2. It then held that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Ibid.*

A.

McDonel has exhausted his administrative remedy within the BOP, submitting a written request to the Warden to move for a reduction of sentence under section 3582(c)(1)(A)(i) on October 2, 2019. That request was denied, and McDonel waited the requisite 30 days before filing his motion in this Court.

B.

Addressing the first element — extraordinary and compelling reasons — McDonel argues that the amendment to section 924(c)'s enhanced mandatory sentence stacking provisions wrought by the First Step Act, coupled with the effect of the old regime's resulting "indefensibly harsh, stacked sentences" and his substantial (albeit imperfect) rehabilitation efforts, satisfies this element.

Because McDonel went to trial on all five robbery counts and their accompanying section 924(c) charges, his convictions called for a seven-year sentence on the first section 924(c) count and four 25-year sentences on the rest of the 924(c) convictions that are to run consecutively to each other, resulting in a total sentence of 107 years on the firearm charges alone. Section 403 of

the First Step Act clarified that 924(c) sentences can be stacked only if the second offense occurs *after* a final conviction on the first offense. § 403(a), 132 Stat. at 5221–22. In other words, if sentenced today, a court would add only seven years on each count to McDonel's sentence for brandishing a gun during the robberies, not 25 years. Congress did not make this change retroactive. § 403(b), 132 Stat. at 5222.

The government maintains that the non-retroactive changes to section 924(c) cannot constitute extraordinary and compelling circumstances allowing compassionate release because doing so would defy Congress's intent in choosing not to make section 403 of the First Step Act retroactive.

Congress never defined what constitutes "extraordinary and compelling" other than that "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t). As noted above, it was the BOP's fumbling its initial charge to bring compassionate release motions in appropriate cases, committed to it exclusively in the Sentencing Reform Act of 1984, *see* Pub. L. No. 98-473, 98 Stat. 1837 (Oct. 12, 1984), that "spurred Congress to pass the First Step Act." *United States v. Maumau*, No. 08-758, 2020 WL 806121, at *5 (D. Utah Feb. 18, 2020). "Extraordinary" is defined as "going beyond what is usual, regular, or customary; or exception to a very marked extent," *Merriam-Webster Dictionary* (2019), available at https://www.merriam-webster.com/ dictionary/extraordinary; and "compelling" is defined as "forceful; demanding attention; convincing," *ibid*., available at https://www.merriam-webster.com/dictionary/compelling. A sense of how those definitions apply in context can be found in the Senate Report that accompanied the Sentencing Reform Act, where Congress indicated that sentence modifications would be appropriate in "cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of *an unusually long sentence*, and some cases in which the

sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term of imprisonment." S. Rep. No. 98-225, at 55-56 (1984) (emphasis added). That last reason likely would apply with greater force to a legislative reduction of a mandatory, consecutive sentence.

Nevertheless, despite that expression of intent, a 2013 Inspector General's report by the Department of Justice found that "although the BOP's regulations and Program Statement permit non-medical circumstances to be considered as a basis for compassionate release, the BOP routinely rejects such requests and did not approve a single non-medical request during the 6-year period of our review." U.S. Dep't Of Justice, *The Federal Bureau of Prisons' Compassionate Release Program*, at ii, (Apr. 2013). And the government in this case maintains that the Court should take the same position because a finding that an extraordinary and compelling reason can arise from a nonmedical reason, particularly from the harshness of a mandatory sentence, would trench upon Congress's prerogative when it declined to make its changes to section 924(c) non-retroactive. Although "this is a relevant consideration, it ultimately has little bearing on the court's conclusion. It is not unreasonable for Congress to conclude that not *all* defendants convicted under § 924(c) should receive new sentences, even while expanding the power of the courts to relieve *some* defendants of those sentences on a case-by-case basis." *Maumau*, 2020 WL 806121, at *7; *see also United States v. O'Bryan*, No. 96-10076, 2020 WL 869475, at *1 (D. Kansas Feb. 21, 2020) (the prohibition on retroactive application "simply establishes that a defendant sentenced before the [First Step Act] is not automatically entitled to resentencing; it does not mean that the court may not or should not consider the effect of a radically changed sentence for purposes of applying § 3582(c)(1)(A)"). More to the point, "the Congressional decision not to make the § 924(c) change retroactive spares the courts an avalanche of applications and inevitable re-

sentencings, no doubt in many cases that do not feature the same grave characteristics presented here." *United States v. Haynes*, No. 93-CR-1043, 2020 WL 1941478, at *16 (E.D.N.Y. Apr. 22, 2020).

McDonel is eligible for compassionate release because of his harsh sentence — which would not be imposed under the law today — together with his youth and record of rehabilitation, discussed below. McDonel was 21 years old when he received a sentence that effectively commits him to spend the rest of his life in prison. On its face, his 107-year (1,285-month) sentence is extraordinarily long, and it appears particularly disproportionate when compared to average federal sentences for similar or more serious crimes: robbery (109 months); firearms (50 months); murder (255 months); drug trafficking (76 months); and kidnapping (171 months). United States Sentencing Commission, *2019 Annual Report and Sourcebook of Federal Sentencing Statistics*, Table 27. If sentenced for the same conduct today, McDonel would face a mandatory sentence of 35 years, less than a third of what he received.

The Court called the circumstances of this sentence to the attention of the United States Attorney many months ago, observing, essentially, that although "[t]here are injustices in our criminal justice system [that] . . . often result from the misuse of prosecutorial power . . . prosecutors also use their powers to *remedy* injustices." *United States v. Holloway*, 68 F. Supp. 3d 310, 311 (E.D.N.Y. 2014) (noting that the United States Attorney has "the power to seek justice even after all appeals and collateral attacks have been exhausted and there is neither a claim of innocence nor any defect in the conviction or sentence. Even in those circumstances, a prosecutor can do justice by the simple act of going back into court and agreeing that justice should be done"). That request was met with inaction earlier and resistance now that the defendant has filed a motion for relief.

The response, however disappointing, was predictable. As another court in a similar case explained, "it is easy to be a tough prosecutor. Prosecutors are almost never criticized for . . . saying 'there's nothing we can do' about an excessive sentence after all avenues of judicial relief have been exhausted. Doing justice can be much harder. It takes time and involves work, including careful consideration of the circumstances of particular crimes, defendants, and victims — and often the relevant events occurred in the distant past. It requires a willingness to make hard decisions, including some that will be criticized." *Id.* at 316. Apparently, the United States Attorney was not up to the task here.

Nonetheless, at least two circuit courts have found that this "drastic change" in the law, eliminating such lengthy mandatory sentences, when considered along with a defendant's individual circumstances such as youth and prison behavior, constitutes an extraordinary and compelling reason to reduce a sentence. *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020) ("The fact that Congress chose not to make § 403 of the First Step Act categorically retroactive does not mean that courts may not consider that legislative change in conducting their individualized reviews of motions for compassionate release under § 3582(c)(1)(A)(i). We emphasize, as did the district courts, that these judgments were the product of individualized assessments of each defendant's sentence. And we note that in granting compassionate release, the district courts relied not only on the defendants' § 924(c) sentences but on full consideration of the defendants' individual circumstances," like their youth when sentenced, the substantial sentences already served, and behavior in prison); *Brooker*, 976 F.3d at 234, 238 (same). Numerous district courts have reached the same conclusion. *See United States v. Marks*, 455 F. Supp. 3d 17 (W.D.N.Y. 2020); *United States v. Brown*, 411 F. Supp. 3d 446 (S.D. Iowa, 2019); *United States v. Taniguchi*, No. 00-50, 2020 WL 6390061, at *3-5 (S.D. Ohio Nov. 2, 2020); *United States v.*

*Baker*, No. 10-20513, 2020 WL 4696594, at *3 (E.D. Mich. Aug. 13, 2020); *United States v. Ellerby*, No. 95-CR-00077, ECF No. 172 (E.D.N.Y. Apr. 29, 2020); *United States v. Haynes*, No. 93-CR-1043, 2020 WL 1941478 (E.D.N.Y. Apr. 22, 2020); *United States v. Decator*, No. CR-95-0202, 2020 WL 1676219 (D. Md. Apr. 6, 2020); *United States v. Chan*, No. 96-cr-00094, 2020 WL 1527895, at *5 (N.D. Cal. Mar. 31, 2020); *United States v. Owens*, No. 97- CR-2546, ECF No. 81 (S.D. Cal. Mar. 23, 2020); *United States v. Redd*, No. 97-CR-00006, 2020 WL 1248493 (E.D. Va. Mar. 16, 2020); *United States v. Young*, No. 00-CR-00002, 2020 WL 1047815 (M.D. Tenn. Mar. 4, 2020); *United States v. O'Bryan*, No. 96-CR-10076, 2020 WL 869475 (D. Kan., Feb. 21, 2020); *Maumau*, 2020 WL 806121; *United States v. Urkevich*, No. 03CR37, 2019 WL 6037391 (D. Neb, Nov. 14, 2019). The sentence in this case is, save one other, the most lopsided and disproportionately severe sentence the Court has had to mete out in more than 20 years on the bench. The changes in the law and their potential mitigating effect on McDonel's sentence easily qualify as extraordinary and compelling reasons to afford relief when considered with the other factors discussed below.

C.

Once the defendant has made a satisfactory showing of extraordinary and compelling circumstances, the Court then must consider the relevant factors in 18 U.S.C. § 3553(a). The government insists that compliance with the Sentencing Commission's policy statement on compassionate release is mandatory, pointing to one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness. That argument is a dead letter after the Sixth Circuit's decision in *Jones*, 980 F.3d at 1109 ("Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an

'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion.").

That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. *See* 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need . . . to protect the public from further crimes of the defendant"). And any sentence reduction also must account for "the seriousness of the offense," the need "to promote respect for the law," and "afford adequate deterrence to criminal conduct." *Id.* § (2)(A), (C). These factors are to be considered together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently extraordinary and compelling to justify a sentence reduction.

Start with "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). McDonel's crimes without question are serious. He and four others went on a spree over a two-week period robbing five retail stores and he was getting ready to rob a sixth. He brandished a gun during each of the robberies. Almost $7,300 was stolen.

McDonel was the youngest of the band of robbers. He was 19 years old at the time and had no previous criminal convictions. He was raised by his single mother, who herself was diagnosed with diabetes as a child. McDonel spent most of his childhood helping his mother receive treatments and caring for his half-brother until his mother passed away when he was 13 and his half-brother was eight. McDonel was very close to his mother and was devastated by her passing. He began to get into trouble and moved to live with his father, an engineer at an Army Base in Maryland. His father tried to help McDonel, but he was unsuccessful. McDonel alleges that his connection with his family is still very strong, despite being incarcerated far away from them in California. In addition to his maternal half-brother, with whom he is still close, McDonel

has three paternal half-sisters, one stepsister, and one stepbrother, all of whom are supportive of him.

The parties paint starkly different pictures of McDonel's post-conviction behavior. The government maintains that McDonel never quite reformed his ways. While incarcerated, corrections officers caught McDonel with a weapon three times: they found a 6-inch flat piece of metal in 2009, a shiv made of a beard-trimmer blade melted at an angle on a toothbrush in 2010, and a melted plastic shank hidden in his toilet in 2013. And in 2012, McDonel assaulted an inmate, trying to punch him in the face. He also tried to bribe a prison official that same year, writing him a letter that offered to pay the official $1,000 a month for "15 cans of chew a week." And he has been written up a half dozen times for abusing telephone privileges and refusing orders.

But that all occurred over seven years ago. Since then, McDonel informs the Court, he has been a "model inmate and has demonstrated a determination to turn his life around." He strayed once in 2017, when officers caught him with synthetic marijuana he acquired after he learned that his uncle, with whom he was close, passed away. But otherwise, he has held stable positions in the jail kitchen and as an orderly in his unit. He spent over 500 hours in education courses and graduated from the "The 7 Habits of Highly Effective People" in May 2016. He has been trying to enroll in the prison's General Educational Development ("GED") program, but he has been unable to do so because the limited spots in the program have been given to inmates with shorter sentences and a higher likelihood of release. Aging apparently has had its beneficial and predictable effect. As McDonel's attorney points out, (1) delinquency "'is usually not an indication of an indelible personality trait'" and (2) there is good reason to believe McDonel will have aged out of violent crime by the time he is released. ECF No. 215, PageID.2461 (quoting MacArthur Foundation Research Network on Law and Neuroscience, *How Should Justice Policy*

*Treat Young Offenders?* Law and Neuro (Feb. 2017), http://www.lawneuro.org/ adol_dev_brief.pdf; *see also United States v. Marshall*, 736 F.3d 492, 503 (6th Cir. 2013) (noting that "[a] defendant's youth, with its varying characteristics of immaturity, vulnerability, and less-than-fully-developed character, is always a factor in determining an appropriate sentence. It is plain that 'children are constitutionally different from adults' not because they are under 18 years of age, but because they have not attained the level of maturity that characterizes adult mentation") (Lawson, J., concurring) (quoting *Miller v. Alabama*, 567 U.S. 460, 471 (2012)).

The sentence also must "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). The sentence imposed in this case does not satisfy any of those requirements. As noted above, the 107-year sentence is far greater than sentences typically given for more serious crimes. A sentence that is too harsh undermines respect and confidence in the criminal justice system just as does a sentence that is too lenient. And the sentence here actually works an injustice. The other recognized goals of deterrence and protecting the public from future crimes that the defendant may commit, 18 U.S.C. § 3553(a)(2)(B)-(C), can be achieved with a far shorter sentence. In fact, the government would have been satisfied with a prison sentence of less than 20% as long as the 107 years McDonel received. It recommended a 30-year unconditional sentence and 20 years with cooperation. And sentencing a youthful defendant to such a long prison term actually deprives him of "needed educational or vocational training," 18 U.S.C. § 3553(a)(2)(D), since he is not eligible for programming when his release date is so far off in the distant future.

Congress has instructed courts "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The Sentencing Commission's annual report illustrates how the present sentence is

disproportionate to the sentences for crimes of equal or greater seriousness. And McDonel's sentence by far exceeded the length of the sentences of his older and more seasoned codefendants, some of whom had previous convictions. The government points out that McDonel's co-conspirators were not similarly situated to him and that they fared better at sentencing because they cooperated with the government. But cooperation alone does not justify such a wide disparity between McDonel's 107-year sentence, Cromer's 20-year sentence, and Woodley's four-year prison term.

Moreover, the government's argument misses the point here. Although it is true that the Court had good reason to treat McDonel's co-conspirators differently, the fact remains that McDonel's current sentence (107 years) is more than three times the mandatory minimum sentence he would have faced if convicted today.

Consideration of the section 3553(a) factors does not support McDonel's immediate release. It does, however, support a reduction in his sentence. And section 3582(c)(1)(A) contains neither a mandate for the Court to order immediate release nor any curtailment on the Court's authority to reduce a sentence once extraordinary and compelling reasons are found. *Maumau*, 2020 WL 806121, at *8 ("[N]otwithstanding the colloquial references to [the] motion as one for "compassionate release," the court need not actually modify the sentence to effectuate [the defendant's] immediate release from prison.") (citing *Urkevich*, 2019 WL 6037391 at *4). Section 3582(c)(1)(A)(i) authorizes the Court to override statutory mandatory *mimina* and mandatory consecutive sentencing provisions to order immediate release. It follows that this authority extends to sentencing reductions, even in the face of such mandatory sentencing provisions found in other statutes. *See* 18 U.S.C. § 3582(c)(1)(A)(i) (stating that "*in any case* . . . the court . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with or

without conditions that does not exceed the unserved portion of the original term of imprisonment) . . . if it finds that . . . extraordinary and compelling reasons warrant such a reduction") (emphasis added).

After evaluating all the pertinent factors, and taking a cue from the government, a total sentence of 20 years in prison for these gun-enabled robberies is sufficient but not greater than necessary to achieve the goals Congress has identified in both sections 3553(a) and 3582(c)(1)(A)(i). That sentence will require McDonel to serve approximately seven more years during which he will have access to the programming that has been denied him due to the remoteness of his release date. It also will allow ample time for post-incarceration planning and placement. And it will correct the injustice that resulted from the extraordinarily long and severe sentence that was mandated under the now-modified statutory sentence-stacking regime that was in place in 2008.

### III.

McDonel has exhausted his administrative remedies. He also has established "extraordinary and compelling" reasons for relief within the meaning of 18 U.S.C. 3582(c)(1)(A)(i). The balance of the other pertinent factors favors a sentence reduction.

Accordingly, it is **ORDERED** that the defendant's motion to reduce his sentence (ECF No. 215) is **GRANTED**.

It is further **ORDERED** that the defendant's term of custody is **REDUCED** to a total of 240 months as follows: one month on counts 1, 3, 5, 7, and 9 of the second superseding indictment; 84 months on count 2 of the second superseding indictment; and 240 months on counts 4, 6, 8, and 10 of the second superseding indictment; all sentences to run concurrently with each other.

- 16 -

It is further **ORDERED** that all the non-custodial provisions of the original judgment and commitment are re-imposed.

It is further **ORDERED** that the defendant must provide to the probation office in the district where he will be released the complete address where he will reside upon release.

Accordingly, it is **ORDERED** that an amended judgment and commitment will enter.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: January 13, 2021